672

## MADERA YOSEMITE BIG TREE AUTO CO. et al. v. UNITED STATES.

### No. J–62.

Court of ·Claims.
May 4, 1931.

The sole issue in this case is whether the Madera Yosemite Big Tree Auto Company and the Yosemite Stage & Turnpike Company were affiliated corporations for the calendar years 1919 and 1920, within the meaning of section 240 (a) and (b) of the Revenue Act of 1918 (40 Stat. 1081). If the said companies are entitled to affiliation, the plaintiff Madera Yosemite Big Tree Auto Company is entitled to recover the sum of $1,932.72, as an overpayment of its taxes for the year 1919, and the sum of $6,063.56 for the year 1920, with interest thereon.

The case having been heard by the Court of Claims upon stipulations, the report of a commissioner, and the evidence, the court makes the following special findings of fact:

1. The plaintiffs, Madera Yosemite Big Tree Auto Company and Yosemite Stage & Turnpike Company, are domestic corporations, and at all times hereinafter mentioned were domestic corporations organized and existing under the laws of the state of California, with principal office at Wawona, Cal., the former engaged in operating auto transportation service over roads built and originally owned by the latter, but later transferred to the United States, with the reservation of a fifteen-year exclusive concession for the use thereof and the right to collect tolls for use by others; they are citizens of the United States and residents of the state of California, have at all times borne true allegiance to the government of the United States, and have not in any way voluntarily aided, abetted, or given encouragement to rebellion against the United States, or at any time aided or abetted in any manner, or given comfort to any sovereign or government that is or ever has been at war with the United States.

2. In due course and within the time required by law, the Madera Yosemite Big Tree Auto Company filed in the office of the collector of internal revenue at San Francisco, Cal., on form 1120, an income and profits tax return which appeared to be for the year ended December 31, 1919. The return in fact covered the fiscal year period from December 1, 1918, to November 30, 1919.

The said return for the taxable year ended November 30, 1919, showed invested capital of $70,624.29, income of $7,336.17, and total taxes, computed on the basis thereof, of $533.62, which taxes so computed were paid when due, and no part thereof has since been returned or repaid to or for the account of either or both of the plaintiffs herein.

In due course, and within the time required by law, the Yosemite Stage & Turnpike Company filed in the office of the collector of internal revenue at San Francisco, Cal., on form 1120, its income and profits tax return for the year ended December 31, 1919.

The said return for the taxable year ended December 31, 1919, showed invested capital of $191,225.94, income of $4,175.46, and total taxes, computed on the basis thereof, of $217.55, which taxes so computed were duly paid, no part of which has since been returned or repaid to or for the account of either or both of the within-named plaintiffs.

On or before the due date of filing thereof, the plaintiffs filed in the office of the collector of internal revenue at San Francisco, Cal., on form 1120, their consolidated income and profits tax return for the calendar year ended December 31, 1920, which return contained the combined tax figures of both companies.

The said return for the calendar year ended December 31, 1920, showed consolidated invested capital of $236,451.04, consolidated net income of $20,086.90, and total taxes, computed on the basis thereof, of $1,808.69, which taxes were paid when due, no part of which has since been returned or repaid to or for the account of either or both of the plaintiffs.

3. Late in the year of 1923 a revenue agent, acting as the agent for the Commissioner of Internal Revenue, made an examination of the returns of the plaintiffs for the taxable years 1919 and 1920, and determined and reported as to Madera Yosemite Big Tree Auto Company that for the year ended November 30, 1919, its invested capital amounted to $39,270.62, its income amounted to $14,220.17, and its total taxes amounted to $3,340.57; that for the year ended November 30, 1920, its invested capital amounted to $36,967.47, its income amounted to $29,558.88, and its total taxes amounted to $9,257.08; and as to Yosemite Stage & Turnpike Company that for the year ended December 31, 1919, its income amounted to $212.13, and that it was not liable for any tax; that for the year ended December 31, 1920, it sustained a loss of $7,745.21, and therefore had no tax liability. The examining officer made his report on the basis of separate returns for the two plaintiffs.

On January 7, 1924, the Madera Yosemite Big Tree Auto Company was notified by J. G. Bright, Deputy Commissioner of Internal Revenue, that an examination of its income tax returns and books of account and records disclosed an additional tax for 1919 and 1920 amounting to $10,255.34.

In the department letter of March 14, 1924, signed by J. G. Bright, Deputy Commissioner of Internal Revenue, the Madera Yosemite Big Tree Auto Company was notified that an examination of its income tax returns and books of account disclosed an additional tax liability for the fiscal year ended November 30, 1919, amounting to $2,770.82.

Under date of March 27, 1925, Deputy Commissioner J. G. Bright notified the Madera Yosemite Big Tree Auto Company that an examination of its income tax return for the fiscal year ended November 30, 1920, disclosed an additional tax liability for that year of $7,335.13.

In both department letters bearing dates respectively March 14, 1924, and March 27, 1925, addressed to Madera Yosemite Big Tree Auto Company and referred to above, the Madera Yosemite Big Tree Auto Company was denied affiliation under section 240 of the Revenue Act of 1918 with Yosemite Stage & Turnpike Company for the years 1919 and 1920, although its right to such affiliation and the computation of the tax on that basis had theretofore been claimed and insisted upon.

Under date of September 4, 1924, Deputy Commissioner J. G. Bright notified the Yosemite Stage & Turnpike Company that an examination of its income and profits tax returns in connection with the revenue agent's report dated October 18, 1923, for the years 1919 and 1920, indicated an overassessment of $217.55 for 1919 and no tax due in 1920.

In said report referred to next above the revenue agent found, and so stated, that the Yosemite Stage & Turnpike Company had a net income in the year 1919 of $212.13, and sustained a loss in the year 1920 of $7,745.21.

4. Under date of December 18, 1924, the Commissioner of Internal Revenue notified the Madera Yosemite Big Tree Auto Company that the additional tax liability for the fiscal year ended November 30, 1919, as set forth in bureau letter dated March 14, 1924, hereinbefore referred to, constituted a deficiency in tax for the year in question, and that, in accordance with the provisions of section 274 of the Revenue Act of 1924 (26 USCA § 1048 note et seq.), it was allowed 60 days from December 18, 1924, within which to file an appeal to the United States Board of Tax Appeals, contesting in whole or in part the correctness of his determination.

On February 10, 1925, Madera Yosemite Big Tree Auto Company filed with the United States Board of Tax Appeals its appeal from the finding of the Commissioner of Internal Revenue that there was a deficiency in its taxes for the year ended November 30, 1919, in which was raised the sole issue of affiliation and the right of the Madera Yosemite Big Tree Auto Company to have its taxes computed on the basis of a consolidated return of its figures and those of Yosemite Stage & Turnpike Company. Upon answer by the Commissioner of Internal Revenue

denying the right of the plaintiff to have its taxes computed on the basis of a consolidated return, issue was joined and the case—United States Board of Tax Appeals, Docket No. 1974—was tried on May 14, 1925.

Thereafter, and on July 14, 1925, the Board of Tax Appeals made its decision and rendered judgment for the Commissioner of Internal Revenue (2 B. T. A. 346). The facts found by the Board, pursuant to section 900 (f) of the Revenue Act of 1924 (26 USCA § 1217 note), are quoted below.

"The taxpayer is a California corporation with principal office in Wawona. On organization in 1913, its entire capital stock, 15,000 shares, of one dollar par value each, were transferred to one Edwin T. Huffman, for five automobiles, tools, and accessories. Huffman then sold 65 per cent of the stock for $9,750.00 in cash to the Yosemite Stage and Turnpike Co., and retained the balance of $5,250, par value, or 35 per cent of the total capital stock.

"The Yosemite Stage and Turnpike Co. had constructed roads into Yosemite National Park at its own expense and operated stage coaches for tourists. Later it transferred the roads to the United States and received in return a fifteen-year exclusive concession to use the roads and the right to collect tolls for such use by others. For a time prior to 1911 it unsuccessfully endeavored to operate automobiles over the roads in place of stage coaches. It then made an arrangement with Huffman to operate his automobiles, paying him $400 a month during the first year. That experiment proved successful, and in 1913 an arrangement with Huffman was affected which resulted in the organization of the taxpayer. The Turnpike Company, as stated, acquired 65 per cent of the stock of the taxpayer. Huffman received a salary of $800 a year from the taxpayer and any dividends payable upon his 5,250 shares, and agreed orally to sell his stock to the Turnpike Company at any time on request, upon being paid therefor on the basis of 35 per cent of the value of such equipment as might be owned by the taxpayer at the time of such transfer.

"The situation remained unchanged until the Turnpike Company requested the transfer in 1923, and the same was carried through. Huffman thereafter continued as president and manager of the taxpayer at a salary of $4,000 a year.

"None of the stock in the Turnpike Company was owned by Huffman. Three of the five directors in the taxpayer were also among the five directors in the Turnpike Company, the other two being different persons in each company.

"The commissioner determined a deficiency for the year 1919 in the amount of $2,770.82, and from that determination the taxpayer duly appealed to this board."

(Reference to "the taxpayer" is reference to Madera Yosemite Big Tree Auto Company.)

5. On or about December 9, 1925, the collector of internal revenue at San Francisco, Cal., made demand upon the Madera Yosemite Big Tree Auto Company for the payment of $2,770.62 additional taxes on account of the fiscal year ended November 30, 1919, which amount was paid by the plaintiff.

Thereafter, and on or about December 29, 1925, Madera Yosemite Big Tree Auto Company filed claim with the collector of internal revenue at San Francisco, Cal., for the refund of additional taxes of $2,770.62, theretofore paid by it on account of 1919, as set forth next above; said claim, except the verification thereof, being in words and figures as follows:

"Claim for Refund of Taxes Illegally Collected

"State of California, County of San Francisco.

"Madera Yosemite Big Tree Auto Co., Wawona, California

"This deponent, being duly sworn according to law, deposes and says that this statement is made on behalf of the taxpayer named, and that the facts given below with reference to said statement are true and complete:

| | Period | Year |
|---|---|---|
| From: | Dec. 1, | 1918 |
| To: | Nov. 30, | 1919 |

1. Business in which engaged, auto stagecoach line.
2. Character of assessment or tax, income and profits tax.
3. Amount of assessment or stamps purchased .......... $3,304.24
4. Reduction of tax liability requested (income and profits tax) .................... 2,770.62
5. Amount to be abated.........
6. Amount to be refunded (or such greater amount as is legally refundable) .............. 2,770.62

"Deponent verily believes that this application should be allowed for the following reasons:

"Failure of the Commissioner of Internal Revenue to affiliate and consolidate the taxpayer with the Yosemite Stage and Turnpike Co.

"Brief of December 6, 1923, appeal of January, 1924, and all and any other briefs, appeals, protests, and/or any other papers filed with the Commissioner of Internal Revenue by the taxpayer are by reference incorporated herein and made a part hereof.

"Petition of the taxpayer filed with the Board of Tax Appeals on or about February 11, 1925, is by reference incorporated herein and made a part hereof."

Said claim was properly verified by the duly constituted and acting officials of the plaintiff.

Thereafter, and on May 29, 1926, C. R. Nash, assistant to the Commissioner of Internal Revenue, notified the Madera Yosemite Big Tree Auto Company that its claim for refund of $2,770.62, taxes paid on account of the period ended November 30, 1919, was rejected.

6. On May 9, 1925, the Commissioner of Internal Revenue notified the Madera Yosemite Big Tree Auto Company that its additional tax liability for the fiscal year ended November 30, 1920, of $7,335.13, as shown by bureau letter dated March 27, 1925, hereinbefore referred to, constituted a deficiency, and that said plaintiff, in accordance with the provisions of section 274 of the Revenue Act of 1924, was allowed 60 days from May 9, 1925, within which to file an appeal to the United States Board of Tax Appeals.

Thereafter, and on June 13, 1925, the plaintiff Madera Yosemite Big Tree Auto Company filed its petition in the United States Board of Tax Appeals, therein raising the question of its right to have its taxes for the year 1920 computed upon the basis of a consolidated return which would include the figures of Yosemite Stage & Turnpike Company. Upon answer by the Commissioner of Internal Revenue, that single issue was joined, but the cause did not come to trial. The Board of Tax Appeals having decided adversely to the plaintiff in its case involving the fiscal year ended November 30, 1919, the plaintiff, on January 11, 1926, filed in the United States Board of Tax Appeals a motion to dismiss without prejudice its appeal, docketed in the board as docket No. 4905, assigning as the reason that the issue raised therein had already been adjudicated upon an identical state of facts presented in the appeal of the Madera Yosemite Big Tree

Auto Company, docket No. 1974. The petition was dismissed January 11, 1926, by order of the Board of Tax Appeals.

7. On March 5, 1926, Madera Yosemite Big Tree Auto Company, upon notice and demand dated February 23, 1926, paid to the collector of internal revenue at San Francisco, Cal., the sum of $7,335.13, additional income and profits taxes for the fiscal year ended November 30, 1920.

On or about March 29, 1926, the Madera Yosemite Big Tree Auto Company filed its claim for refund of additional income and profits taxes paid for the year ended November 30, 1920, in the sum of $7,335.13, said claim, except the verification thereof, being in words and figures as follows:

"Claim for refund of taxes illegally collected

"State of California, County of San Francisco.

"Madera Yosemite Big Tree Auto Co., Wawona, California

"This deponent, being duly sworn according to law, deposes and says that this statement is made on behalf of the taxpayer named, and that the facts given below with reference to said statement are true and complete:

| | Period | Year |
|---|---|---|
| From: | Dec. 1, | 1919 |
| To: | Nov. 30, | 1920 |

1. Business in which engaged, auto stage coach line.
2. Character of assessment or tax, income and profits tax.
3. Amount of assessment or stamps purchased.......... $7,335.13
4. Reduction of tax liability requested (income and profits tax) ..................... 7,335.13
5. Amount to be abated.......... 
6. Amount to be refunded (or such greater amount as is legally refundable) ............... 7,335.13

"Deponent verily believes that this application should be allowed for the following reasons:

"Failure of the Commissioner of Internal Revenue to affiliate and consolidate the taxpayer with the Yosemite Stage and Turnpike Co.

"Brief of December 5, 1923, appeal of January, 1924, and all and any other briefs, appeals, protests and/or any other papers filed with the Commissioner of Internal Revenue by the taxpayer are by reference incorporated herein and made a part hereof.

"Petition of the taxpayer filed with the Board of Tax Appeals on or about February 11, 1925, is by reference incorporated herein and made a part hereof."

Said claim was properly verified by the duly constituted and acting officials of the plaintiff.

On November 30, 1926, C. R. Nash, assistant to the Commissioner of Internal Revenue, notified the Madera Yosemite Big Tree Auto Company that its claim for the refund of $7,335.13, corporation income and profits taxes for the fiscal year ended November 30, 1920, was rejected.

8. No action, except as aforesaid, has been had on this claim in Congress or in any of the departments or in the United States Board of Tax Appeals. The Madera Yosemite Big Tree Auto Company has been since the claim herein presented arose and is now the sole and absolute owner thereof. It has made no transfer or assignment of said claim or of any part thereof or of any interest therein.

9. If the plaintiffs herein were affiliated corporations within the meaning of section 240 of the Revenue Act of 1918 during the calendar years 1919 and 1920, plaintiff Madera Yosemite Big Tree Auto Company is entitled to recover the sum of $1,932.72, taxes overpaid for the calendar year 1919, and $6,063.56, taxes overpaid for the calendar year 1920, or a total sum of $7,996.28, together with interest thereon.

10. Upon organization, in 1913, Madera Yosemite Big Tree Auto Company issued its entire capital stock of 15,000 shares, of the par value of $1 each, to Edwin T. Huffman for five automobiles, machine ship equipment, accessories, etc. Huffman then sold 65 per cent. of the stock of Madera Yosemite Big Tree Auto Company to Yosemite Stage & Turnpike Company for $9,750, and retained the remaining 35 per cent., amounting to $5,250. At the same time, and as a part of the general plan to form a company to operate automobiles over the roads of Yosemite Stage & Turnpike Company, a contract between Yosemite Stage & Turnpike Company and Madera Yosemite Big Tree Auto Company was entered into by the terms of which Madera Yosemite Big Tree Auto Company was to operate automobiles over the roads then owned by Yosemite Stage & Turnpike Company, but later transferred to the United States government. Operating contracts were made by the boards of directors of the respective companies, consisting in each case of five members, three of whom were directors in both companies.

Huffman was the president of and a director in the Madera Yosemite Big Tree Auto Company, but not in the Yosemite Stage & Turnpike Company.

11. As a part of the general arrangement and agreement to organize Madera Yosemite Big Tree Auto Company and employ it in the operation of automobiles over the roads of Yosemite Stage & Turnpike Company, Huffman agreed to sell his stock interest in Madera Yosemite Big Tree Auto Company to Yosemite Stage & Turnpike Company at any time demand therefor might be made, and to accept in payment an amount equal at the time of demand to 35 per cent. of the value of the property of Madera Yosemite Big Tree Auto Company. Huffman's stock in Madera Yosemite Big Tree Auto Company was surrendered by him upon demand of Yosemite Stage & Turnpike Company on December 1, 1923, pursuant to the above-mentioned agreement originally entered into when Madera Yosemite Big Tree Auto Company was organized.

12. Originally Yosemite Stage & Turnpike Company operated horse-drawn vehicles over its roads. In 1911 and 1912 Huffman operated his own automobiles over the roads of Yosemite Stage & Turnpike Company, and was paid about $400 a month for his work during the first year. Prior to Huffman's experiments others had used automobiles over the roads of Yosemite Stage & Turnpike Company, but with very little success. It was after Huffman had demonstrated that automobiles could be operated profitably over the roads of Yosemite Stage & Turnpike Company that Madera Yosemite Big Tree Auto Company was formed. Huffman's compensation as president and manager of Madera Yosemite Big Tree Auto Company was $800 a year, plus an additional amount of $800 if earned by the company, and such dividends as might be paid to him as a stockholder of 35 per cent. of the stock of Madera Yosemite Big Tree Auto Company. Upon the surrender by Huffman on December 1, 1923, of his stock in Madera Yosemite Big Tree Auto Company, he was given a contract of employment, as contemplated by the original agreement under which his stock was to be surrendered upon demand with a salary of $4,000 a year, 10 per cent. of the profits of Madera Yosemite Big Tree Auto Company over $20,000, before income taxes and depreciation, and 30 per cent. of the net profits.

13. Yosemite Stage & Turnpike Company caused Madera Yosemite Big Tree Auto Company to be incorporated in order that it might operate automobiles over roads to which it had an exclusive concession, without becoming liable in its own corporate capacity on contracts which such auto transportation would necessitate and in order that it might secure the services of Huffman on the basis of compensation to reach Huffman in the form of dividends on stock in Madera Yosemite Big Tree Auto Company rather than on the basis of a contract for a stipulated salary for which the said Yosemite Stage & Turnpike Company would have been liable.

14. There was at all times between the incorporation of Madera Yosemite Big Tree Auto Company and the acquirement of Huffman's stock interest in that company in December, 1923, opportunity for shifting profits between Yosemite Stage & Turnpike Company and Madera Yosemite Big Tree Auto Company. The two companies constituted a single business unit and between them carried on but one business. Madera Yosemite Big Tree Auto Company was at all times dependent upon Yosemite Stage & Turnpike Company for its existence. It could not have operated over the roads to which Yosemite Stage & Turnpike Company held an exclusive concession, except with the consent of that company and upon such terms as it might dictate.

Virgil Y. Moore, of Washington, D. C., for plaintiffs.

J. A. Rees, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, WHALEY, LITTLETON, and GREEN, Judges.

WILLIAMS, Judge.

The sole issue presented in this case is whether the Madera Yosemite Big Tree Auto Company (hereinafter referred to as the Auto Company) and the Yosemite Stage & Turnpike Company (hereinafter designated the Turnpike Company) were affiliated corporations for the years 1919 and 1920.

It is mutually agreed that, if the plaintiffs are held to be affiliated corporations for the years in question, the Auto Company is entitled to recover the sum of $1,932.72 for the year 1919, and $6,063.56 for the year 1920, with interest as provided by law.

Section 240 of the Revenue Act of 1918, subparagraph (b), provides:

"For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests."

The Turnpike Company owned directly 65 per cent. of the outstanding stock of the Auto Company during the years 1919 and 1920. The remaining 35 per cent. of the stock of the Auto Company was owned by one Huffman, president and general manager of the company. Huffman owned no stock in the Turnpike Company.

The percentage of stock necessary to constitute "substantially all of the stock" is not definitely fixed in the statute of 1918, nor in the applicable regulations, but under the uniform holdings of the Board of Tax Appeals and the courts the ownership of 65 per cent. of the stock of the Auto Company by the Turnpike Company is not sufficient to constitute ownership of substantially all of the stock of such corporation. Wadhams & Co. v. United States, 67 Ct. Cl. 235; Continental Products Co. v. United States, 44 F. (2d) 257, 70 Ct. Cl. 556; United States v. Cleveland, Painesville & Eastern R. R. Co., Inc. (C. C. A.) 42 F.(2d) 413, 419.

The plaintiffs contend that they are entitled to affiliation for the years involved, because the Turnpike Company, in addition to its direct ownership of 65 per cent. of the stock of the Auto Company exercised control within the meaning of the statute of the 35 per cent. of stock in the said company owned by Huffman. It is argued, the arrangement whereby Huffman became the owner of 35 per cent. of the stock of the Auto Company was merely a profit-sharing agreement, and that, by reason of the outstanding option held by the Turnpike Company of Huffman's stock, the control of such stock was at all times vested in the Turnpike Company, and was never exercised by Huffman.

It is further argued that the two companies constituted one business unit, carrying on the single business of transporting passengers through the park for hire; that the only business or income either company had during the years in question resulted from their contract with each other; that three out of the five directors of each com-

pany were identical persons; and that there was ample opportunity for the shifting of profits from one company to the other without regard for the corporate relationship.

The taxes sought to be recovered were paid by the Auto Company as deficiency assessments for the years 1919 and 1920. For the year 1919, the Auto Company, when notified by the Commissioner of the asserted deficiency, filed its appeal with the Board of Tax Appeals. The Board of Tax Appeals (2 B. T. A. 346) rendered judgment against the plaintiff denying it affiliation with the Turnpike Company for the said year. The Board said:

"The mere agreement by a single minority interest to sell its stock to the single majority interest on request at a price to be determined upon the exercise of the option, unsupported by any evidence that control was in fact exercised by the majority as to the voting of the minority stock or as to how any of the stock was voted, does not constitute sufficient proof of the affiliation of two corporations within the meaning of section 240 of the Revenue Act of 1918.

"As stated by us in Appeal of Isse Koch & Co., 1 B. T. A. 624, 627:

" 'The control, however, must be shown to be a genuine and real control actually exercised, and it can not be established by mere assertions or agreements between majority and minority stockholders unsupported by facts. Potential control of stock is not sufficient in itself to justify consolidation.'

"The direct ownership by the Yosemite Stage and Turnpike Co. of 65 per cent of the taxpayer's stock was not, to our minds, an ownership or control of *substantially all* of such stock."

Because of the adverse decision of the Board as to the year 1919, the Auto Company dismissed its appeal for the year 1920.

We think the decision of the Board of Tax Appeals is correct. It is not shown that the Turnpike Company exercised any real or actual control over the stock owned by Huffman in the Auto Company during the years involved. The plaintiffs cite Ullman Manufacturing Co. v. United States, 67 Ct. Cl. 104; Koch & Co., Inc., 1 B. T. A. 624, and Hagerstown Shoe & Legging Co., 1 B. T. A. 666, as applicable to the instant case. In these cases it was held that, where an employee holds stock in a company, and his position is such that the company which em-

ploys him virtually controls his action with reference to the stock, this is such control as is referred to in the statute.

Huffman, the employee in this case, occupied an entirely different position in his relations to the Auto Company than that occupied by the employees in the cases cited in relation to the companies employing them. Huffman's employment was not of a character where the employee works under the direction of his employer. He was the owner of more than one-third of the stock of the Auto Company, and as its president and general manager had the direction and control of everything relating to the business of the company. While it is true he had given an option to the Turnpike Company to purchase his stock on demand, the arrangement also included an agreement that in case the option was exercised by the Turnpike Company it would give him a satisfactory contract of employment. Under these circumstances, and in the absence of a showing to the contrary, it must be held Huffman retained complete control of his stock in the Auto Company until it was taken over by the Turnpike Company in 1923.

The fact that the two companies constituted a single business unit is not alone determinative of their right to affiliation. The test is whether the ownership or control of the stock meets the requirements of the statute.

In United States v. Cleveland, Painesville & Eastern Railroad Company, Inc., supra, the court said:

"We find that the two corporations, alleged to have been affiliated and so found by the Board of Tax Appeals and the District Court, were concededly operated as a single interurban road, that there was a complete identity of control of the businesses, and that the joint operating expenses were arbitrarily apportioned. Defendant actually owned 70.9 per cent of the stock of the Ashtabula Company, and voted, by means of solicited proxies, over 99 per cent. of the stock that was voted at the annual meetings. This stock, however, constituted only 77 per cent. to 84 per cent. of the total issue—which can not be deemed 'substantially all' of the sole class of stock issued by the subsidiary corporation, within the fair meaning of the act."

The plaintiffs are not entitled to affiliation for the years 1919 and 1920. The petition is dismissed. It is so ordered.